**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BETTY JO ECKENBERGER,** | : | |
| **Petitioner** | : | **No. 1:17-cr-00118-1** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |

**<u>MEMORANDUM</u>**

Before the Court is Petitioner Betty Jo Eckenberger ("Petitioner")'s motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255.  (Doc. Nos. 115, 127.)  For the reasons that follow, the Court will deny Petitioner's motion.

**I.      BACKGROUND**

On April 19, 2017, Petitioner and her then-husband, James David Eckenberger, were charged by indictment with the following crimes: (1) conspiracy to produce child pornography (count 1); (2) production of child pornography (count 2); (3) receipt and possession of child pornography (count 3); and (4) possession of child pornography (count 4).  (Doc. No. 1.) Petitioner initially entered a plea of not guilty to all counts on April 20, 2017.  (Doc. No. 14.)  At that time, Attorney Daniel M. Myshin, Esq. ("Attorney Myshin") was appointed to represent Petitioner.  (Doc. No. 13.)  Petitioner subsequently entered into a plea agreement (Doc. No. 55) and thereafter appeared for a change of plea hearing before Magistrate Judge Carlson on March 2, 2018 (Doc. No. 61).  Pursuant to the plea agreement, Petitioner entered a plea of guilty to count 1 of the Indictment, conspiracy to produce child pornography (Doc. Nos. 66, 67), executed a Consent to Proceed before United States Magistrate Judge for a Felony Guilty Plea (Doc. No. 62), and executed an Approval to Institute a Presentence Investigation before a Conviction of Plea of Guilty (Doc. No. 64).  The plea agreement notified Petitioner that "Count One carries a

mandatory minimum period of imprisonment of 15 years," and that the Court would be "free to impose upon the defendant any sentence up to and including the maximum sentence of imprisonment for 30 years." (Doc. No. 55 at 3, 19.) The plea agreement contained an appellate waiver indicating that, by executing the agreement, Petitioner "knowingly waives the right to appeal the conviction and sentence," and further stating that "[t]his waiver includes any and all possible grounds for appeal, whether constitutional or nonconstitutional." (Id. at 26.)

The Court adopted the Report and Recommendation of Magistrate Judge Carlson as to Petitioner's plea of guilty on March 26, 2018, and scheduled sentencing for June 20, 2018. (Doc. No. 76.) Sentencing was ultimately rescheduled to August 1, 2018. (Doc. No. 79.) A Final Presentence Investigation Report ("PSI Report") and First Addendum to that PSI Report ("Addendum") were filed on July 10, 2018. (Doc. Nos. 86, 87.) On July 27, 2018, Petitioner's counsel filed a Sentencing Memorandum on behalf of Petitioner. (Doc. No. 90.) Included as an exhibit to the Sentencing Memorandum was a "July 17, 2017 Psychological Evaluation and Report of Betty Jo Eckenberger by Timothy P. Foley, Ph.D." ("Dr. Foley's Evaluation"). (Id. at 27.)

On August 1, 2018, the Court held a sentencing hearing and ultimately sentenced Petitioner to a term of imprisonment of two hundred four (204) months (or seventeen (17) years) followed by a term of supervised release of fifteen (15) years. (Doc. Nos. 93, 95.) Petitioner filed a notice of appeal on August 14, 2018 (Doc. No. 101), and on December 27, 2018, the Third Circuit Court of Appeals issued its mandate enforcing the appellate waiver contained in Petitioner's plea agreement and rejecting Petitioner's appeal (Doc. No. 112).

On October 18, 2019, Petitioner filed a pro se motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 115.) Petitioner also filed letter requests

seeking transcripts of her plea proceeding and sentencing proceeding.  (Doc. Nos. 113, 114, 120.)  The Court issued an administrative Order directing Petitioner to complete the attached Notice of Election within forty-five (45) days and advising her that failure to comply would result in the Court ruling on her Section 2255 motion as filed.  (Doc. No. 118.)

However, after issuance of the Court's administrative Order, and noting that Petitioner's pro se motion raised an ineffective assistance of counsel claim and an issue regarding her competency, the Court subsequently issued an Order directing the appointment of counsel for Petitioner in connection with her Section 2255 motion and the provision of the requested transcripts to Petitioner.  (Doc. No. 121.)  Attorney Craig E. Kauzlarich ("Attorney Kauzlarich") was ultimately appointed to represent Petitioner in connection with her Section 2255 motion. (Doc. No. 122.)  Attorney Kauzlarich then filed, under seal, an ex parte motion seeking a competency evaluation of Petitioner (Doc. Nos. 123-125), which the Court granted by way of Order dated March 31, 2020 (Doc. No. 126).   That competency evaluation was conducted in March 2021 after numerous delays attendant to the COVID-19 pandemic.  (Doc. No. 127-1.)  On November 8, 2021, Petitioner filed a counseled amended motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. No. 127), which was accompanied by an exhibit comprising a "Forensic Psychological Evaluation of Petitioner by Jennifer Guriel Myers, Ph.D." ("Dr. Myers' Evaluation").  (Doc. No. 127-1.)

On November 10, 2021, the Court issued an Order directing service of Petitioner's pro se and counseled motions on the Government and the filing of a response within twenty (20) days. (Doc. No. 129.)  The Government filed its Response to Petitioner's Amended Motion (Doc. No. 32) on November 29, 2021.  Although the Court's November 10, 2021 Order permitted

Petitioner to file a reply to the Government's response, no reply was filed.  Accordingly, Petitioner's motion and amended motion are ripe for disposition.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct her sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See id. § 2255(a).  However, Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing.  See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)).  Rather, Section 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice."  See Addonizio, 442 U.S. at 185.  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner has one year from the time his conviction becomes final to file a Section 2255 motion.  See 28 U.S.C. § 2244.

As noted above, Petitioner's Section 2255 challenge to her sentence is based on a claim of ineffective assistance of counsel.  In order to establish entitlement to relief, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).  The first Strickland prong requires Petitioner to "establish first that counsel's performance was deficient."  See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001).  This prong requires Petitioner to show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth

Amendment.  See id.  To that end, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  See id. (citing Strickland, 466 U.S. at 688).  However, "[t]here is a 'strong presumption' that counsel's performance was reasonable."  See id.

Under the second Strickland prong, Petitioner "must demonstrate that he was prejudiced by counsel's errors."  See id.  This prong requires Petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  See id. (quoting Strickland, 466 U.S. at 694).  Reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome."  See id. (quoting Strickland, 466 U.S. at 694).

Notably, Petitioner must make an adequate showing with respect to both prongs of the Strickland test in order to be entitled to relief.  See Strickland, 466 U.S. at 686.  A failure to make the required showing on either prong precludes a finding in Petitioner's favor.  See id. at 700.  "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible," courts should address the prejudice prong first when it is dispositive of a petitioner's claims.  See United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

## III.   DISCUSSION

### A.   Asserted Grounds for Relief

As an initial matter, the Court notes that Petitioner's pro se motion raised the following four grounds of ineffective assistance of counsel:

Ground One:      "Counsel rendered ineffective assistance in violation of the Sixth Amendment at the sentencing phase by failing to investigate, prepare and present mitigating evidence of mental retardation";

Ground Two:     "Defendant is intellectually disabled and counsel failed to investigate thoroughly Defendant's competency renders Defendant – plea unknowingly and involuntary";

Ground Three:   "Failure of counsel to explain that Defendant was entitled to a presumption of innocence and that the prosecutor have the burden of proving her guilty beyond a reasonable doubt and failure to investigate and pursue the possibility of establishing the Defendant's mental instability as a defense constitutes ineffectiveness"; and

Ground Four:    "Ineffective assistance of counsel rendered when counsel failed to properly informed Defendant regarding her sentencing exposure prior to pleading guilty."

(Doc. No. 115 at 13-16.)

As noted above, after Attorney Kauzlarich was appointed to represent Petitioner in connection with her motion, he obtained Dr. Myers' Evaluation for purposes of assessing Petitioner's competency.  (Doc. No. 127-1.)  That evaluation does not provide factual support for Petitioner's pro se contention in Ground Two of her initial motion that she was incompetent at the time of her conviction.  Instead, it concludes that Petitioner was competent to stand trial at the time of her conviction.  Specifically, the evaluation states:

> **Betty Jo Eckenberger <u>did possess a reasonable degree of rational understanding</u> of the nature and object of the proceedings against her.**  In accordance with 18 U.S.C. § 4241, Betty Jo Eckenberger possessed a rational and factual understanding of the proceedings against her.  She was aware of the charges and possible penalties and that her previous state conviction was tied directly to her current case.  Despite her intellectual disabilities, Ms. Eckenberger articulated a basic understanding of the judicial system and processes.  She was able to describe her plea agreement and to outline the decision-making process she employed when decided with her trial attorney how to proceed.

> **It is also my opinion that, at the time of her conviction, Betty Jo Eckenberger <u>was of sufficient mental capacity to consult with her attorney and to assist in her own defense</u>.**  Betty Jo Eckenberger exhibited sufficient present ability to consult with her attorney with a reasonable degree of rational understanding.  Though she was perhaps not as assertive as she would have preferred, Ms. Eckenberger did communicate with her counsel at the time of her conviction.

Because Betty Jo Eckenberger was able to consult with her attorney with a reasonable degree of rational understanding to assist in her own defense, **she was competent to stand trial at the time of her conviction**.

(Doc. No. 127-1 at 9.)

Also as noted above, based on Dr. Myers' Evaluation, Attorney Kauzlarich filed an amended motion to vacate, set aside, and/or correct sentence pursuant to 28 U.S.C. §2255.  (Doc. No. 127.)  In that amended motion, Attorney Kauzlarich asserted that "[c]ounsel now brings this Amended Motion to Vacate, Set Aside and/or Correct Sentence to clarify and narrow the issues to be reviewed."  (Id. ¶ 9.)  Petitioner's amended motion describes her grounds for relief as follows: "[s]entencing [c]ounsel, Attorney Myshin provided ineffective assistance of counsel by failing to present for sentencing purposes evidence related to Petitioner's abusive childhood, diminished mental capacity, low IQ, and mental health difficulties."  (Id. ¶ 13.)  Specifically, Petitioner maintains that the mitigation evidence presented at the time of sentencing "was unduly focused on risk of re-offending and not factors in Petitioner's background making her vulnerable to the co-defendant's influence and control."  (Id. ¶ 14.)  Petitioner argues that Dr. Myers' Evaluation reflects that Petitioner is "mentally disabled" and "passive and insecure," and that those deficiencies were overlooked during Dr. Foley's Evaluation conducted in connection with Petitioner's sentencing.  (Id. ¶ 15.)  Petitioner maintains that "[h]ad [s]entencing [c]ounsel adequately presented this mitigation, Petitioner would have received a lower sentence, closer to or at the mandatory minimum of one hundred eighty (180) months."  (Id. ¶ 16.)

In response to Petitioner's amended motion, the Government maintains that, given Defendant's prior conviction, Dr. Foley's Evaluation "properly focused on the risk of recidivism under 18 U.S.C. § 3553(a)(2)(C)," and that "it was a reasonable strategy to attempt [sic] concerns of recidivism at sentencing."  (Doc. No. 132 ¶ 14.)  The Government also argues that

"[p]revious counsel was successful in efforts to avoid a sentence of 1,200 months and a sentence of 360 months, which would have been justified," and that "given the requirement of the 15 mandatory minimum sentence in this case, counsel's efforts in obtaining a sentence of 17 years were entirely reasonable." (Id. ¶ 16.)

Upon careful review of the record before the Court, the arguments presented, and the applicable law, the Court finds meritless Petitioner's claim that counsel was ineffective for failing to present additional mitigating evidence at sentencing.   Specifically, the Court finds no basis upon which to conclude that counsel's failure to present the evidence prejudiced Petitioner. Presentation of the additional mitigating evidence adduced in Dr. Myers' Evaluation at the sentencing hearing would not have impacted the length of Petitioner's sentence.

As reflected in the transcript of Petitioner's sentencing proceeding, as well as in the Sentencing Memorandum that he filed with the Court, Attorney Myshin vigorously advocated for the Court to impose the mandatory minimum sentence of fifteen (15) years.  (Doc. Nos. 105 at 2-5, 90.)  Petitioner's guideline range, as calculated by the United States Probation Office, suggested a potential sentence of thirty (30) years.  (Doc. No. 86 at 13.)  Ultimately, the Court imposed a sentence of seventeen (17) years.  In articulating its rationale for imposing a sentence of seventeen (17) years, or two years more than the mandatory minimum sentence, the Court stated as follows:

> I have considered everything counsel has said and written.  This is an unusual case. It's unusual in a couple of respects.  We see a lot of child pornography cases, but fortunately, or maybe unfortunately, not too many contact cases, because there's a strong suspicion that when we see heavy use of child pornography, there is contact and it's just not been detected.  But here we've detected it.  We know that children were physically harmed, and that is something that the [C]ourt has to consider in fashioning a sentence somewhere in the guideline range.  Because of that, that I believe, takes me away from the minimum sentence that should be imposed here. The other thing that I note that is unusual about this case is the fact that as far as I have been informed,  the images that were produced were produced for a very

limited use and they have not been spread across the Internet and we're not going to have victims ten years from now still being traumatized by the fact that their images are being enjoyed by pedophiles into eternity. So that certainly militates in Ms. Eckenberger's favor. And also, we have seen a full disclosure by counsel of psychological testing and background, and I'm given to understand some of the challenges that the defendant faces and some of the intellectual limitations that she has, so that makes the case unusual, as well. So for all of those reasons, I believe that a sentence within the guideline range of the – somewhere between the minimum and the maximum of 360 months is appropriate, sufficient, but not greater than necessary.

(Doc. No. 105 at 8-9.)

As the above excerpt reflects, the Court's imposition of two additional years beyond the mandatory minimum sentence was largely based on the "nature and circumstances" of the offense, specifically, the fact that children were harmed in connection with the offense, which, the Court stated, "takes me away from the mandatory minimum sentence." (Id. at 8.) In light of the Court's focus on the nature of the offense as a basis for imposing a sentence greater than the mandatory minimum sentence, there is no reasonable likelihood that the Court would have imposed a lesser sentence had Attorney Myshin presented additional mitigating evidence such as that contained in Dr. Myers' Evaluation.[1] Accordingly, even if the Court were to assume that Attorney Myshin's performance was deficient for failure to develop additional mitigation evidence as argued by Petitioner, Petitioner was not prejudiced by that failure. See Awe v. United States of America, No. 15-8155, 2017 WL 1157865, at *4 (D.N.J. Mar. 27, 2017) (concluding that petitioner failed to demonstrate prejudice in connection with an ineffective assistance of counsel claim in which petitioner claimed that counsel should have raised additional mitigating evidence at sentencing where the court determined that, even if the additional mitigating evidence had been presented, the court would not have sentenced petitioner

_____

[1] In addition, the above excerpt indicates that the Court considered Petitioner's "intellectual limitations" when fashioning an appropriate sentence. (Id. at 9.)

differently).  Therefore, Petitioner is not entitled to relief on her claim of ineffective assistance of counsel for failure to present additional mitigating evidence at sentencing.

### B.     Evidentiary Hearing

Section 2255(b) advises that a petitioner may be entitled to a hearing on her motion.  The decision to hold a hearing is wholly within the discretion of the district court.  See Gov't of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  Where the record affirmatively indicates that a petitioner's claim for relief is without merit, the claim may be decided on the record without a hearing.  See Gov't of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985).  In the instant case, the Court finds that "the motion and files and records of this case show conclusively that the movant is not entitled to relief."  See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Forte, 865 F.2d at 62).  Accordingly, the Court finds no reason to hold an evidentiary hearing in this case.

### C.     Certificate of Appealability

In proceedings brought under Section 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued.  A court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2).  In other words, a COA should not issue unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Because the Court concludes that Petitioner's claim of ineffective assistance is meritless for the reasons discussed above, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Jurists of reason would not disagree with the Court's assessment of Petitioner's claims.  Accordingly, the Court will not issue a COA in this case.

**IV.   CONCLUSION**

Based on the foregoing, the Court will deny Petitioner's Section 2255 motion (Doc. Nos. 115, 127), and will not issue a COA.  An appropriate Order follows.